IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

CALVIN EUGENE BAKER,

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

      Appellant,

v.                        CASE NO. 1D14-4110

STATE OF FLORIDA,

      Appellee.

_____/

Opinion filed May 15, 2015.

An appeal from the Circuit Court for Okaloosa County.
William F. Stone, Judge.

Nancy Daniels, Public Defender, Steven L. Seliger, Assistant Public Defender, Tallahassee, for Appellant.

Pamela Jo Bondi, Attorney General, Matthew Pavese and Jennifer J. Moore, Assistant Attorneys General, Tallahassee, for Appellee.

THOMAS, J.

This appeal involves two consolidated circuit court cases. Appellant was charged with possession of cocaine, possession of marijuana less than 20 grams, possession of drug paraphernalia, grand theft of an automobile and grand theft. Appellant seeks review of an order denying his dispositive motion to suppress. We affirm the trial court's denial of the motion to suppress, as we read the plain language of section 316.605(1), Florida Statutes (2013), to mean that a license

tag's alphanumeric designation may not be obstructed by any matter, including a trailer hitch. We certify conflict with the decision of the Second District Court of Appeal in Harris v. State, 11 So. 3d 462 (Fla. 2d DCA 2009) (Khouzam, J., dissenting).

*Facts*

At the hearing on Appellant's motion, the Okaloosa County Sheriff's Deputy testified that he observed a vehicle with an obscured license tag and conducted a traffic stop, but he could not recall specifically what obscured the tag. Estimating that he was about 25 feet from the vehicle when trying to read the tag, he recalled that it was illegible, and he incorrectly called it in to dispatch; he had to call it in a second time, which is when he discovered the vehicle was stolen. He admitted that he had since watched his patrol car's in-car video recording, and there was a trailer hitch blocking the license tag. The deputy thought the trailer hitch was part of what was blocking the tag, but also thought it had been altered or damaged and this contributed to his trouble reading the tag. Appellant was placed under arrest after it was discovered the vehicle was stolen. In searching Appellant after his arrest, the deputy discovered marijuana, cocaine and a crack pipe. The deputy acknowledged that the sole basis for pulling Appellant over was the trailer hitch obstructing the license tag, but maintained that he still thought something else obstructed the tag, but he could not recall what it was.

2

While acknowledging the Second District's decision in <u>Harris</u>, the State asserted that even if the court found that the trailer hitch was the sole object obscuring the tag and the stop was illegal, the State should still prevail based on the inevitable discovery doctrine, citing <u>Carter v. State</u>, 868 So. 2d 1276 (Fla. 4th DCA 2004), for support. In response, Appellant's counsel argued that <u>Harris</u> specifically held that a trailer hitch, in and of itself, is an insufficient basis to obscure a tag. Appellant then argued against the State's inevitable discovery position. Although it rejected the State's argument that some matter other than the trailer hitch obscured the tag, the trial court denied Appellant's motion to suppress based upon <u>Carter</u> and the inevitable discovery doctrine.

While this appeal was pending, the Fifth District issued its opinion in <u>State v. English</u>, 148 So. 3d 529 (Fla. 5th DCA 2014). There, the court held that an officer had the authority to conduct a traffic stop under the plain reading of section 316.605, Florida Statutes, where the alphanumeric designation was obstructed by the license tag's light and attached wires hanging down in front of it.

### *Analysis*

An appellate court reviews a matter of statutory interpretation de novo. <u>Germany v. Darby</u>, 157 So.3d 521, 522 (Fla. 1st DCA 2015) (citing <u>Raymond James Fin. Servs., Inc. v. Phillips</u>, 126 So.3d 186, 190 (Fla.2013)). Section 316.605, Florida Statutes, provides in pertinent part:

(1) Every vehicle, at all times while driven, stopped, or parked upon any highways, roads, or streets of this state, shall be licensed in the name of the owner thereof in accordance with the laws of this state . . . [and] **display the license plate** . . . in such manner . . . [that] **the alphanumeric designation shall be clear and distinct and free from defacement, mutilation, grease, and other obscuring matter,** so that they will be **plainly visible and legible at all times 100 feet from the rear or front**. Except as provided in s. 316.2085(3), vehicle license plates shall be affixed and displayed in such a manner that the letters and numerals shall be read from left to right parallel to the ground. **No vehicle license plate may be displayed in an inverted or reversed position or in such a manner that the letters and numbers and their proper sequence are not readily identifiable**. Nothing shall be placed upon the face of a Florida plate except as permitted by law or by rule or regulation of a governmental agency. . . . A violation of this subsection is a noncriminal traffic infraction, punishable as a nonmoving violation as provided in chapter 318.

(Emphasis added.) As noted above, the Second and the Fifth District Courts currently disagree on how this section is interpreted.

In Harris v. State, the defendant appealed his convictions for possession of cocaine, marijuana and drug paraphernalia, arguing that the trial court erred in denying his motion to suppress. 11 So. 3d at 463. Similar to the facts here, the trailer hitch on the defendant's vehicle obstructed the license plate so that it could not be read within thirty to fifty feet of the vehicle. Id. The officers stopped the defendant based on the obscured license plate, smelled the odor of fresh marijuana coming from inside the vehicle, and found marijuana in the defendant's pocket and cocaine in the glove box. Id.

4

The Second District found that the relevant portion of the statute was as follows:

> [A]ll letters, numerals, printing, writing, and other identification marks upon the plates regarding the word "Florida," the registration decal, and the alphanumeric designation shall be clear and distinct and free from defacement, mutilation, grease, and *other obscuring matter*, so that they will be plainly visible and legible at all times 100 feet from the rear or front.

Id. (quoting § 316.605(1), Fla. Stat.) (emphasis in original).  The majority held that the only language that would apply was the phrase "other obscuring matter," and concluded that the doctrine of *ejusdem generis* caused this language to apply only to matter on the license plate itself:  "Pursuant to the 'ejusdem generis' canon of statutory construction, where general words follow the enumeration of particular classes of things, the general words will be construed as applying only to things of the same general class as those enumerated. *Black's Law Dictionary* 514 (6th ed. 1990)."  Id.  The court found that "a reading of the language in the statute shows that the license plate must be free from obscuring matter, be it grease, grime, or some other material placed over the plate.  However, it would not include a trailer hitch that is properly attached to the truck's bumper."  Id.

The Second District held that "[m]atters external to the tag, such as trailer hitches, bicycle racks, handicap chairs, u-hauls, and the like are not covered by the

5

statute." Id. at 463-64. The majority opinion concluded by looking to decisions in other states, noting that it was adopting the minority view:

> Although there are no cases on point in Florida, in State v. Ronau, 2002 WL 31743012 (Ohio Ct.App.2002), the court held that the trial court did not err in finding that the stop of a truck was improperly based on the fact that the trailer hitch was blocking a portion of the license plate. **We recognize that Ronau appears to be the minority position**. See People v. White, 93 Cal.App.4th 1022, 1026, 113 Cal.Rptr.2d 584 (Cal.Ct.App.2001) (holding that license plate that is partially obstructed from view by a trailer hitch violates law, which provides that plates must be maintained in a condition so as to be clearly legible, and such violation provided officer with a lawful basis to stop vehicle); State v. Hill, 131 N.M. 195, 34 P.3d 139, 147 (N.M.Ct.App.2001) (where law required plate to be "maintained free from foreign material and in a condition to be clearly legible," truck's plate was in violation of law where truck's trailer hitch obscured plate's renewal sticker); State v. Smail, 2000 WL 1468543 (Ohio Ct.App.2000) (concluding that pursuant to law, which provided that "license plates ... shall not be covered by any material that obstructs their visibility," the middle numbers of a license plate were not in "plain view" and stop of truck was lawful where license was obstructed by a ball hitch).

Id. (Emphasis added.)

Judge Khouzam dissented and concluded that there was no need to resort to rules of statutory construction, as the plain reading of the statute would require the alphanumeric designation on license plates to be plainly visible and legible at all times, 100 feet from the rear or the front of the vehicle, which would include items placed in front of a license plate like trailer hitches. Id. at 464-65. The dissent asserted that the majority's interpretation was unreasonable, as it resulted in a

situation where items that clearly obscured the plate would not be in violation of the statute, if the items were not affixed to the license plate itself. Id. In support of its interpretation, the dissent pointed to the Third District's opinion in Wright v. State, 471 So. 2d 155 (Fla. 3d DCA 1985), as instructive, noting that Wright involved a license plate obscured by a dirty rag and there the court held that the officer had the authority and even duty to investigate why the license plate was obscured. Id. The dissent found the trailer hitch analogous, noting that it appeared that the rag in Wright was not affixed to the face of the license plate. Id.

In State v. English, 148 So. 3d 529 (Fla. 5th DCA 2014), the Fifth District adopted a similar view as the dissent in Harris. In English, the defendant was stopped by two police officers after they noticed that the plate light and its attached wires were hanging down "in front of" the license plate and obstructing the officers' views of the plate, rendering at least one letter unreadable. Id. The plate only became readable momentarily, when the vehicle turned, causing the wires to shift, but after the turn became obstructed again. Id. Based on the fact that the plate was unobstructed during the turn, the trial court concluded that once they were able to read the actual numbers, it was no longer a violation. Id.

The Fifth District reversed and held:

> Based on the plain reading of the statute, the alphanumeric designation on the license plate must be plainly visible at all times. Here, according to the testimony of the officers, which the trial court found reliable, English's tag was not in compliance with the statute.

As such, the officers had the authority to conduct a traffic stop in this case. See Wright v. State, 471 So.2d 155, 156–57 (Fla. 3d DCA 1985) (finding that officer charged with enforcing motor vehicle laws had the duty and authority to investigate why a vehicle that was parked in the roadway had its license tag partially obscured with a dirty rag, in violation of the law). But see Harris v. State, 11 So.3d 462, 463–64 (Fla. 2d DCA 2009) (finding that police officers who were unable to read defendant's license plate because of a trailer hitch properly attached to the vehicle lacked authority to perform a traffic stop, because matters external to the tag, such as trailer hitches, bicycle racks, handicap chairs, u-hauls, and the like were not "other obscuring matter").

Id. at 530.

We agree with the Fifth District that the statute is not ambiguous based on the plain reading of its text. Thus, in our view, we respectfully conclude that the majority opinion in Harris incorrectly applied a rule of statutory construction, when the applicable language from the statute was clear and unambiguous. See Hobbs v. State, 999 So. 2d 1025, 1027 (Fla. 2008) ("'[W]hen the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning.'" (quoting Holly v. Auld, 450 So. 2d 217, 219 (Fla. 1984)).

Our decision that the statute is plain and unambiguous does not rely solely on the statute's language requiring the alphanumeric designation to be "clear and distinct and free from defacement, mutilation, grease, and other obscuring matter,

8

so that they will be plainly visible and legible at all times 100 feet from the rear or front." We also read the statute as a whole, which we are required to do, rather than a single part of the statute. St. Mary's Hospital, Inc. v. Phillipe, 769 So. 2d 961, 967 (Fla. 2000) ("It is a cardinal rule of statutory construction that a statute must be construed in its entirety and as a whole."); Fla. Jai Alai, Inc. v. Lake Howell Water & Reclamation Dist., 274 So. 2d 522, 524 (Fla. 1973) ("Legislative intent should be gathered from consideration of the statute as a whole rather than from any one part thereof.").

Here, we look to the portion of the statute that the vehicle's license tag must be "display[ed] . . . in such manner . . . [that] the alphanumeric designation shall be clear and distinct and free from defacement, mutilation, grease, and other obscuring matter, so that they will be plainly visible and legible **at all times 100 feet from the rear or front.**" § 316.605(1), Fla. Stat. (emphasis added). In our view, the Legislature's intent could not be more clear: the tag's alphanumerical designation must be displayed and visible within 100 feet. This is reiterated in the statute's requirement that prohibits the display of tags such that the "letters and numbers . . . are not readily identifiable." Id.

We further note that the statutory catchall phrase "other obscuring matter" does not distinguish from obscuring matter "on" the license tag versus external matter obscuring the tag. Had the Legislature wanted to draft a statute that only

9

made it illegal to obscure the license tag's alphanumeric designation by matter that was "on" the tag, it could have easily done so, as other states have provided. Instead, the Legislature's overarching concern is that the alphanumeric designation be visible and legible within 100 feet.

Appellant asserts that the notion that a license tag obscured by a trailer hitch could violate the statute is absurd, as the Legislature could not have intended that every vehicle with a trailer hitch attached to it would be subject to a stop by law enforcement officers. We disagree, and hold that this plain reading is reasonable, as the Legislature has a legitimate public-safety interest in ensuring that license tags remain unobstructed. The Legislature has an interest in ensuring that law enforcement officers can readily identify license tag numbers. In addition, the Legislature could have intended that the general public has the ability to identify license tags, if necessary, to report criminal activity or other important information. As such, we do not think such a plain reading of the statute leads to an absurd conclusion.

We also find that Florida Supreme Court case law supports this interpretation. See State v. Diaz, 850 So. 2d 435 (Fla. 2003). In Diaz, the court addressed a stop that occurred, because the sheriff's officer could not read the temporary license tag on the top of the defendant's rear window. Id. at 436.

10

Notably, in analyzing the issue, the court outlined the difference between the temporary license tag statute and the permanent license tag statute, stating:

> The Florida statute regulating temporary license tags provided: "Temporary tags shall be conspicuously displayed in the rear license plate bracket or attached to the inside of the rear window in an upright position *so as to be clearly visible from the rear of the vehicle*." § 320.131(4), Fla. Stat. (2000) (emphasis added). While the Legislature has required that permanent license plates must be "plainly visible and legible at all times 100 feet from the rear or front," § 316.605(1), Fla. Stat. (2000), the Legislature has failed to mandate a distance at which temporary tags must be fully legible. Notably, the temporary tag statute does not specifically require that the expiration date be legible, and it is the State itself which creates and issues the temporary license tag. *See* § 320.131(1), (4), Fla. Stat. (2000).

Id. at 437. This analysis supports an interpretation that the Legislature intended permanent license tags to be plainly visible within 100 feet.

Other state legislatures have addressed this issue, consistent with our analysis. Missouri and Texas have taken two different approaches in addressing external matter obstructing a license tag. In Missouri, one section of the statute requires a license tag to be plainly visible, but another section specifically provides that an additional temporary license or a third license needs to be used to serve as the visible tag when a bicycle rack or other item obstructs the view.

> 5. No motor vehicle or trailer shall be operated on any highway of this state unless it shall have displayed thereon the license plate or set of license plates issued by the director of revenue or the state highways and transportation commission and authorized by section 301.140*. Each such plate shall be securely fastened to the motor vehicle or

11

trailer in a manner **so that all parts thereof shall be plainly visible and reasonably clean so that the reflective qualities thereof are not impaired**. Each such plate may be encased in a transparent cover so long as the plate is plainly visible and its reflective qualities are not impaired. . . .

§ 301.130, Miss. Rev. Stat. (2014). Additionally, section 301.140, Missouri Revised Statutes, provides in relevant part:

> 9. An additional temporary license plate . . . with a configuration that matches an existing or newly issued plate may be purchased by a motor vehicle owner to be placed in the interior of the vehicle's rear window such that the driver's view out of the rear window is not obstructed and the plate configuration is clearly visible from the outside of the vehicle **to serve as the visible plate when a bicycle rack or other item obstructs the view of the actual plate**. . . . The newly produced . . . plate may only be used on the vehicle with the matching plate, and the additional plate shall be clearly recognizable as a third plate and only used for the purpose specified in this subsection.

(Emphasis added.)

In Texas, the Legislature specifically provided that trailer hitches, bicycle racks, wheelchair lifts, and other specifically outlined items do not apply to language on obscuring the visibility of license tags. In particular, section 504.945, Texas Transportation Code (2013), states:

> (A)   A person commits an offense if the person attaches to or displays on a motor vehicle a license plate that:
>    . . .
>    (7) has a coating, covering, protective substance, **or other material** that:
>        (A) distorts angular visibility or detectability;

12

(B) alters or obscures one-half or more of the name of the state in which the vehicle is registered; or
(C) alters or obscures the letters or numbers of the license plate number or the color of the plate.

. . .

(c) **Subsection (a)(7) may not be construed to apply to**:
(1) a trailer hitch installed on a vehicle in a normal or customary manner;
(2) a transponder, as defined by Section 228.057, that is attached to a vehicle in the manner required by the issuing authority;
(3) a wheelchair lift or wheelchair carrier that is attached to a vehicle in a normal or customary manner;
(4) a trailer being towed by a vehicle; or
(5) a bicycle or motorcycle rack that is attached to a vehicle in a normal or customary manner.

(Emphasis added.)   Thus, the Texas Legislature specifically exempted trailer hitches and other similar obstructions.

Both Missouri and Texas recognize that the language in relation to obscuring in their respective statute or code could clearly be read as including trailer hitches, bicycle racks and similar items; but both states specifically enacted laws that either specifically allow such obstructions or require persons to provide additional license tags on the vehicle.

Here, the deputy had a valid basis for the stop, as the trailer hitch obscured a portion of the alphanumeric designation; thus, we affirm the trial court's denial of Appellant's motion to suppress.  As we conclude that the deputy had a valid basis for the stop based on our interpretation of the statute, we do not address the trial

13

court's conclusion that even if the stop was illegal, the inevitable discovery doctrine would apply. We certify that our decision interpreting this statute is in conflict with the Second District's decision in Harris v. State, 11 So. 3d 462 (Fla. 2d DCA 2009).

AFFIRMED; CONFLICT CERTIFIED.

LEWIS, C.J., and BENTON, J., CONCUR.